**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SUSAN JINKS, individually and as
personal representative of the Estate
of Carl H. Jinks,
<u>Plaintiff-Appellant,</u>

v.

JAMES MCCAULEY; RICHLAND
COUNTY, SOUTH CAROLINA; CHARLES

ESKRIDGE, Doctor,
<u>Defendants-Appellees,</u>

and

RICHLAND COUNTY DETENTION
CENTER; GURNEY BELL; JANE ROE;
JOHN DOE,
<u>Defendants.</u>

No. 98-1003

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-96-1650-3)

Submitted: August 11, 1998

Decided: September 1, 1998

Before NIEMEYER, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

James M. Griffin, SIMMONS, GRIFFIN & LYDON, L.L.P., Columbia, South Carolina; Bradford P. Simpson, SIMPSON, DONG & WINGATE, L.L.P., Columbia, South Carolina, for Appellant. William H. Davidson, II, Andrew F. Lindemann, DAVIDSON, MORRISON & LINDEMANN, P.A., Columbia, South Carolina; James E. Parham, Jr., Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Susan Jinks ("Susan") appeals the district court's grant of summary judgment to Appellees in her 42 U.S.C.§ 1983 (1994) action. Finding no error in the district court's decision to grant summary judgment to Appellees, we affirm.

Susan's suit against Appellees--Richland County, South Carolina ("Richland County"), James McCauley ("McCauley"), and Dr. Charles Eskridge ("Eskridge")--arose out of the death of her husband Carl H. Jinks ("Carl"), which occurred while he was a prisoner in the Richland County Detention Center (the "jail"). Suing as personal representative of Carl's estate, Susan alleged that Appellees violated Carl's Eighth Amendment right to be free from cruel and unusual punishment and that those violations resulted in Carl's death. These allegations were based on the following facts.

On October 14, 1994, a South Carolina judge found Carl in contempt of court for nonpayment of $1500 in child support and sentenced Carl to confinement in jail pending payment. Carl, who had been "booked" into the jail that morning, informed the court that he was an alcoholic, that he was experiencing withdrawal from alcohol,

2

and that he wished to be placed in a treatment center rather than jail. The court informed Carl that it could not order him to be confined to a treatment center and that he would have to ask to see a physician at the jail before anything could be done for him.

Nothing in the record indicates that Carl asked to see a physician once he returned to the jail. However, approximately three days later, on October 17, a guard at the jail observed Carl clutching the bars of his cell while shaking, sweating profusely, smiling, and laughing. Although Carl did not request medical care, the guard reported the situation to his supervisor, who escorted Carl to Eskridge, a private physician under contract to provide medical services to the jail.

Eskridge examined Carl and determined that he was suffering from Stage II alcohol withdrawal. Eskridge prescribed the drug Librium, which is used to treat the symptoms of alcohol withdrawal, ordered Carl to be kept under observation, and scheduled a "follow-up" visit for the next day. According to his testimony in the district court, Eskridge did not feel that Carl's situation was urgent,[1] and therefore he did not direct jail officials to begin administering the drug to Carl immediately. Instead, Eskridge acted with the knowledge that the Librium would be ordered from a private pharmacy and delivered to the jail the next morning, at which time Carl could begin taking it.[2]

The record discloses that officials at the jail followed Eskridge's orders. Guards periodically checked on Carl, and at approximately 6:30 a.m. on October 18, they noticed that Carl had gotten down from his bunk and was sleeping on the floor. They continued to check on Carl, and at approximately 9:30 a.m., they observed Carl sitting upright in the cell.[3] According to one of the guards, Carl was no longer sweating, shaking, laughing, or smiling.[4] However, while guards were placing two other inmates in the cell with Carl at 10:30 a.m., the guards discovered that Carl was dead.

_____

[1] J.A. at 405.

[2] Id.
[3] Id. at 103.

[4] Id. at 104.

3

Susan commenced this action in June 1996. In her complaint, she asserted several different allegations regarding Appellees. First, she alleged that Richland County violated Carl's Eighth Amendment rights by maintaining a policy or custom of inadequate medical care for inmates in the jail. Second, she alleged that Richland County's policy or custom of ordering prescriptions for inmates to be delivered the next day violated Carl's Eighth Amendment rights. Third, she alleged that Richland County violated Carl's Eighth Amendment rights by failing to implement a detoxification policy in the jail, by failing to require guards to document their carrying out of a physician's orders, and by allowing overcrowding at the jail. Fourth, Susan alleged that James McCauley, Director of the jail, violated Carl's Eighth Amendment rights by permitting these conditions to exist in the jail. Finally, Susan alleged that Eskridge violated Carl's Eighth Amendment rights by providing negligent care and treatment that resulted in Carl's death.

After discovery, Appellees moved for summary judgment. Finding that Susan presented no triable issues of fact on any of her claims, the district court granted that motion in November 1997. This appeal followed.

We review the district court's grant of summary judgment de novo[5] and affirm its decision in its entirety. First, the district court determined that Susan's claim that Richland County violated Carl's Eighth Amendment rights by maintaining a policy or custom of inadequate medical care for inmates in the jail did not meet the requirements we established for such a claim in Spell v. McDaniel.[6] In Spell, we stated that a viable claim of municipal liability under 42 U.S.C. § 1983 can only arise "`when execution of a government's policy or custom'" results in the injury alleged.[7] In addition, we held that the execution of a policy or custom that is not unconstitutional on its face must be more than merely negligent. Rather, it must be at least deliberately

_____

[5] **See M&M Med. Supplies v. Pleasant Valley Hosp.**, 981 F.2d 160, 163 (4th Cir. 1992).
[6] 824 F.2d 1380 (4th Cir. 1987).
[7] **Spell v. McDaniel**, 824 F.2d 1380, 1385 (4th Cir. 1987) (quoting Monell v. Department of Soc. Servs. of New York, 436 U.S. 658, 694 (1978)).

indifferent to or undertaken with reckless disregard for the constitutional rights of the person who was allegedly injured.**8**

Here, we agree with the district court's conclusion that, "[e]ven viewed in the light most favorable to [Susan], the evidence in the record does not demonstrate that the conduct of Richland County rose to the level of deliberate indifference or reckless disregard, nor does it demonstrate the `persistent and widespread' practice [of the policy or custom] required to invoke . . . municipal liability."**9** In attempting to prove that the "policy or custom" that allegedly resulted in Carl's death was "widespread," Susan introduced only the testimony of Linda Byrd ("Byrd"), who had worked as a nurse in the jail. However, Byrd's testimony never touched on the gravamen of Susan's first allegation against Richland County--that it did not provide medical care for inmates by following physicians' orders. Rather, Byrd's testimony was only that inmates were not being seen at times by physicians,**10** which is undisputably not the case here.

In addition, as Byrd's testimony focused only on the practices of medical personnel other than Eskridge, we agree with the district court's conclusion that it was insufficient to show any causal connection between the allegedly widespread policy or custom and Carl's death. Further, as the district court also found, even if Byrd's testimony pertained to the substance of Susan's first allegation and offered evidence of a causal connection between that allegation and Carl's death, there is nothing in Byrd's testimony that indicates that the problems she described were "`so permanent and well-settled as to [have] the force of law,'"**11** and thus, represented actionable policies or customs.

Therefore, we agree with the district court's conclusion that Susan failed to offer any evidence that might support a finding of liability on the part of Richland County in this regard. Accordingly, we affirm the district court's grant of summary judgment on this allegation.

_____

**8 See id.** at 1390-91.
**9** J.A. at 780 (quoting Spell , 824 F.2d at 1386).
**10 Id.** at 516.
**11 Spell**, 824 F.2d at 1386 (quoting Monell, 436 U.S. at 691)(internal citation omitted)).

5

We also affirm the district court's grant of summary judgment to Richland County on Susan's claim that the County's policy of ordering medication for the jail to be delivered the next day was deliberately indifferent to or undertaken with reckless disregard for the constitutional rights of prisoners. As the district court noted, it is undisputed that it was Eskridge who decided that Carl did not need to begin taking Librium immediately. Had Eskridge decided otherwise, the jail presumably could have obtained the prescription quicker. However, as jail officials are generally entitled to rely on a physician's decision regarding care for a prisoner, [12] there was no policy or custom that caused Carl's death. Rather, if Carl's death can be attributed to the fact that he did not begin taking Librium on October 17, then the only person who could be held liable in this regard is Eskridge, who, in his professional judgment, determined that Carl could wait until the next day to begin receiving the drug. As we discuss below, such potential malpractice is not actionable under § 1983.

With regard to Susan's allegation that Richland County should be held liable for the failure of McCauley, the jail's director, to implement certain detoxification and medical treatment policies and to ease the problem of overcrowding at the jail, we agree with the district court's conclusion that Susan has offered no evidence that "any of these proposed policies would have prevented Carl Jinks['s] death, [or that they were] constitutionally required." [13] As the district court concluded, this allegation is largely speculative and makes virtually no appeal to any standards that might form the basis for an action under § 1983. In fact, as the district court noted, the only standards to which Susan appeals are South Carolina state standards, [14] which, as standards grounded in state law, cannot form the basis for an allegation that federal constitutional rights were violated under color of state law.[15] Therefore, we affirm the district court's grant of summary judgment on this allegation.

We also affirm the district court's finding that Susan presented no

_____

[12] **See Miltier v. Beorn**, 896 F.2d 848, 854 (4th Cir. 1990).
[13] J.A. at 783 (citations omitted).
[14] Appellant's Br. at 24.
[15] **See, e.g.**, Baker v. McCollan, 443 U.S. 137, 146 (1979).

6

triable issue of fact regarding supervisory liability on McCauley's part. To be subject to supervisory liability under§ 1983, it must be shown that: (1) McCauley had actual or constructive knowledge of the allegedly unconstitutional actions; (2) McCauley tacitly approved of or was deliberately indifferent to those actions; and (3) that there was an affirmative causal link between McCauley's failure to correct the situation and the injury alleged.[16]

However, as we have found that Susan failed to present any evidence regarding the existence of unconstitutional actions in the jail, we need not address the question of whether McCauley can be subject to supervisory liability for those alleged actions. Accordingly, we affirm the district court's grant of summary judgment to McCauley on this allegation.

Finally, we decline to disturb the district court's grant of summary judgment to Eskridge on Susan's allegation that Eskridge violated Carl's Eighth Amendment rights by providing negligent care and treatment that resulted in Carl's death. This issue was not specifically discussed in the district court's memorandum. However, alleged medical malpractice does not rise to the level of a constitutional violation simply because the victim is a prisoner.[17] With this principle in mind, we find no triable issues in Susan's allegations in this regard. Accordingly, we agree with the district court's conclusion that summary judgment was warranted on this allegation.

For these reasons, we affirm the district court's order granting summary judgment in its entirety. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not aid the decisional process.

AFFIRMED

_____

[16] **See Shaw v. Stroud**, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

[17] **See Estelle v. Gamble**, 429 U.S. 97, 106 (1976).